**FILED**
OCT 1 2 2007
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA  '07 MJ 8847

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Magistrate Case No.: |
| ) | |
| Plaintiff, ) | COMPLAINT FOR VIOLATION OF |
| v. ) | |
| ) | 21 U.S.C. § 952 and 960 |
| Daniel ONTIVEROS(1) ) | Importation of a Controlled |
| Victor ONTIVEROS (2) ) | Substance (Felony) |
| ) | |
| Defendants. ) | |

The undersigned complainant being duly sworn states:

That on or about October 11, 2007, within the Southern District of California, defendants Daniel ONTIVEROS and Victor ONTIVEROS, did knowingly and intentionally import approximately 47.33 kilograms (104.13 pounds) of marijuana, a Schedule I Controlled Substance, into the United States from a place outside thereof, in violation of Title 21, United States Code, Section 952 and 960.

The complainant states that this complaint is based on the attached Statement of Facts incorporated herein by reference.

_____
Vincent McDonald Special Agent
U.S. Immigration & Customs Enforcement

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 12th DAY OF October 2007.

_____
Pete C. Lewis
UNITED STATES MAGISTRATE JUDGE

UNITED STATES OF AMERICA
v.
Daniel ONTIVEROS (1)
Victor ONTIVEROS (2)

## STATEMENT OF FACTS

This complaint is based on the reports, documents, and notes furnished to U. S. Immigration and Customs Enforcement Special Agent Vincent McDonald.

On October 11, 2007, at approximately 1415 hours, Daniel ONTIVEROS, entered the U.S. from the Republic of Mexico via the Andrade, CA Port of Entry. D. ONTIVEROS, the registered owner since September 2007, was driving his 1997 GMC Jimmy and was accompanied by his brother, Victor ONTIVEROS.

Customs & Border Protection Officer (CBPO) Parle was conducting primary inspections on primary lane #2. Both occupants stated they were U.S. citizens. CBPO Parle asked both occupants what they were bringing back from Mexico. D. ONTIVEROS stated a piggy bank and his cousin's tire. V. ONTIVEROS stated a blanket. CBPO Parle asked D. ONTIVEROS if the vehicle belonged to him and D. ONTIVEROS stated yes. CBPO Parle referred D. ONTIVEROS, V. ONTIVEROS and the vehicle to vehicle secondary (VS) for further inspection.

In VS, CBPO Macias approached the GMC Jimmy and asked D. ONTIVEROS and V. ONTIVEROS the purpose of their trip to Mexico. D. ONTIVEROS stated they went to visit a cousin who had been in a vehicle accident. CBPO Macias asked D. ONTIVEROS and V. ONTIVEROS what were they bringing back from Mexico. D. ONTIVEROS stated a piggy bank, blanket, and a wheel that belonged to his cousin. CBPO Macias asked D. ONTIVEROS and V. ONTIVEROS to step out of the vehicle and escorted both subjects into the pedestrian secondary. CBPO Macias returned to the GMC Jimmy and observed CBPO Liebelt screening the vehicles tires with a mechanical device.

CBPO Liebelt informed CBPO Macias that the readings the device was receiving from the

1  GMC Jimmy were not normal and a canine inspection was requested.

2  CBPO Medley utilized his Narcotics Human Detection Dog to inspect the vehicle. The canine
3  alerted to the rear passenger tire of the vehicle driven by D. ONTIVEROS. CBPO Medley then
4
5  informed CBPO Macias of the alert by his canine.

6  CBPO Macias removed the tire the canine alerted to and an x-ray was conducted. CBPO
7  Macias stated x-rays revealed an anomaly in the tire. Further inspection of the tire by CBPO
8  Macias, uncovered metal plates that were welded inside of the tire that were shaped like
9  compartments. CBPO Macias removed the other three tires from the vehicle and discovered similar
10
11 designed metal plates. The metal plates were opened and a green, leafy substance inside of each
12 compartment was revealed. The substance tested positive for marijuana, a Schedule I Controlled
13 substance. A total of 16 packages with a total weight of 47.33 kilograms (104.13 pounds) were
14 discovered inside of the tires.

15 D. ONTIVEROS and V. ONTIVEROS were placed under arrest and advised of their
16
17 constitutional rights pursuant Miranda. D. ONTIVEROS and V. ONTIVEROS acknowledged
18 those rights and waived them. D. ONTIVEROS and V. ONTIVEROS were interviewed and
19 provided contradictory statements.

20 D. ONTIVEROS stated to Special Agent Vincent McDonald that he did not know marijuana
21
22 was in the vehicle. D. ONTIVEROS stated he spoke to his girlfriend on his cellular telephone while
23 driving to Mexico and she was disappointed in him about the trip. V. ONTIVEROS stated to Special
24 Agent Vincent McDonald that he did not know marijuana was in the vehicle. V. ONTIVEROS
25 stated D. ONTIVEROS slept most of the time while he was driving from California to Mexico and
26 did not receive or make any cellular telephone calls when he awoke.
27
28 D. ONTIVEROS claimed the purpose of the trip was to inquire about the status of his cousin
that had been involved in a car accident. D. ONTIVEROS added he did not know anything about

1  bringing back a rim for a vehicle from Mexico prior to the trip. V. ONTIVEROS claimed that D.
2  ONTIVEROS asked him to go to Mexico to pick up a rim and visit their cousin who had been
3  involved in an accident prior to leaving the United States.
4
5      D. ONTIVEROS stated he met an unidentified subject on the street who asked him to do him
6  a favor and take a rim back to the U. S. D. ONTIVEROS claimed he allowed the unidentified
7  subject to take the vehicle to an unidentified location for approximately ten minutes to retrieve the
8  rim.
9
10     D. ONTIVEROS claimed he and V. ONTIVEROS drove to a house in Mexico to inquire
11 about his cousin and no one was there so they departed Mexico. V. ONTIVEROS stated he and D.
12 ONTIVEROS visited a house in Mexico and acquired the rim at that location from one of three
13 unnamed subjects who were standing outside the house.
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28